O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY RACHEL EARLE,<br><br>                       Plaintiff,<br><br>       vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>             Defendant. | Case No. EDCV 13-1809 RNB<br><br>ORDER AFFIRMING DECISION OF COMMISSIONER |

The Court now rules as follows with respect to the two disputed issues listed in the Joint Stipulation.[1]

**A.**  **Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination (Disputed Issue Two).**

---

[1]  As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

Disputed Issue Two is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 10-16.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton standard," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

Here, plaintiff testified that she cannot work primarily because of injuries she suffered after falling off a 75-foot cliff, depression, and diabetes.  (See 1 AR 38.) Plaintiff specifically testified that she has difficulty walking 300 feet, that she cannot lift more than 10-15 pounds, that she cannot sit for more than 15-20 minutes at a time, that she cannot stand for more than 30 minutes at a time, that she has difficulty concentrating, and that she has "bad days" that render her bedridden.  (See 1 AR 50-55.)  Plaintiff also testified and stated in a function questionnaire that she had difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, and climbing stairs.  (See 1 AR 56, 195.)  Plaintiff also testified that she had difficulty performing chores and lifting a gallon of milk or a small bag of dog food.  (See 1 AR 50, 56.) Plaintiff also testified that her medications caused drowsiness, sleepiness and nausea.  (See 1 AR 52.)

The ALJ found that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not

2

credible to the extent they were inconsistent with the ALJ's residual functional capacity determination.  (See 1 AR 18.)  In support of this adverse credibility determination, the ALJ proffered two reasons.

First, the ALJ determined that plaintiff had described daily activities that were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (See 1 AR 18.)  Specifically, the ALJ noted that plaintiff's testimony about having difficulty walking 300 feet was belied by statements she had made in a function report that she exercised three times per week for 30 minutes, that she drove a car, and that she shopped for clothes and groceries. (See 1 AR 18; see also 1 AR 190, 193.)  The ALJ also noted that these daily activities contradicted plaintiff's statement that her impairments affected her ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs.  (See 1 AR 18; see also 1 AR 195.)  In addition, the ALJ noted that, although plaintiff had testified she was limited in performing household chores, she also had reported that she could prepare some meals and feed the dog.  (See 1 AR 18; see also 1 AR 191, 192.)  The ALJ also noted that, although plaintiff had testified that she could barely lift a gallon of milk and cannot lift a small bag of dog food, she also had testified that she could lift and carry a 10 pound bag of sugar.  (See 1 AR 18; see also 1 AR 50.)

The Court finds that the ALJ's determination that plaintiff's statements about her daily activities were inconsistent with her complaints of disabling symptoms and limitations was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination.  See Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (evidence that claimant's self-reported activities suggested a higher degree of functionality than reflected in subjective symptom testimony adequately supported adverse credibility determination); Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (evidence that claimant exercised and undertook projects suggested that claimant's later claims about the severity of his limitations were exaggerated); see also Molina v. Astrue, 674 F.3d

1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (evidence of daily activities may form basis of an adverse credibility determination where it contradicts the claimant's other testimony); Smolen, 80 F.3d at 1283-84 (ALJ may consider claimant's inconsistent statements in evaluating credibility).[2]

Second, the ALJ determined that plaintiff's subjective symptom testimony was "not supported by the medical evidence of record" in multiple respects.  (See 1 AR 18-19.)  Specifically, the ALJ noted that plaintiff's testimony that she had "bad days" that rendered her bedridden was not corroborated by the record and that if she were confined to her bed, "one would expect such an individual to obtain emergency care, and this is non-existent."  (See 1 AR 18.)  The ALJ also noted that medical records indicated plaintiff lived alone in a second story condominium and was independent with all activities of daily living.  (See 1 AR 18; see also 1 AR 296.)  The ALJ also

---

[2]     Although plaintiff contends that the ALJ improperly found that her daily activities were "somehow equivalent to full time competitive employment" (see Jt Stip at 13), the Court notes that this was not the actual basis of the ALJ's adverse credibility determination.  Instead, the ALJ determined that evidence of plaintiff's daily activities were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations.  See Orn, 495 F.3d at 639 (daily activities may form basis for adverse credibility determination where activities contradict claimant's other testimony, independent of whether activities meet threshold for transferable work skills); see also Valentine, 574 F.3d at 693 ("The ALJ recognized that this evidence [of daily activities] did not suggest Valentine could return to his old job . . ., but she thought it did suggest Valentine's later claims about the severity of his limitations were exaggerated.").

noted that the medical record reflected that plaintiff's diabetes was under control. (See 1 AR 18; see also 1 AR 449.)  The ALJ also noted, with respect to plaintiff's physical impairments, that the medical record reflected that she had grossly normal visual fields; that her motor skills, sensory skills, and reflexes were intact; that there was no evidence of end organ damage, neuropathy, or acidosis; that x-ray and MRI exams revealed only mild to moderate degenerative changes in her left knee; that the range of motion in her knees was grossly within normal limits bilaterally; that an x-ray of her back was normal; and that an x-ray of her lumbosacral spine showed minimal to mild findings.  (See 1 AR 18-19; see also 1 AR 273, 447, 448, 449, 451; 2 AR 624.)  The ALJ also noted, with respect to plaintiff's mental impairments, that the medical record did not support a disabling degree of dysfunction, but instead reflected, for example, that her memory was adequate, that she was able to recall 3 out of 3 words after 5 minutes, that she was able to do serial 7's correctly, that she was able to do simple calculations, and that she correctly spelled the word "world" backwards and forward.  (See 1 AR 19; see also 1 AR 454-55.)  Finally, the ALJ noted that plaintiff's complaints of medication side effects did not support a finding that these limitations continued to be disabling for 12 continuous months.  (See 1 AR 19.)

Plaintiff contends that this second reason was not legally sufficient because the ALJ could not rely on a lack of corroborating evidence "alone" to reject plaintiff's subjective symptom testimony.  (See Jt Stip at 12.)  However, the ALJ did not rely only on such a reason here; rather, the lack of objective evidence to substantiate plaintiff's claims was just one factor in his adverse credibility determination.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.")  Accordingly, the Court finds that this second reason also was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination.  See, e.g., Stubbs-

1    <u>Danielson v. Astrue</u>, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ sufficiently explained

2    reasons for discrediting claimant's subjective symptom testimony where, <u>inter</u> <u>alia</u>,

3    it was "not supported by the objective medical findings nor any other corroborating

4    evidence"); <u>Morgan v. Comm'r of Soc. Sec.</u>, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ

5    may properly consider conflict between claimant's testimony of subjective complaints

6    and objective medical evidence in the record); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602

7    (9th Cir. 1998) (ALJ may properly rely on weak objective support for the claimant's

8    subjective complaints); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may

9    properly rely on lack of objective evidence to support claimant's subjective

10   complaints); <u>Nyman</u>, 779 F.2d at 531 (noting that "a claimant's self-serving

11   statements may be disregarded to the extent they are unsupported by objective

12   findings").

13           In sum, the Court finds that reversal is not warranted based on the ALJ's

14   alleged failure to make a proper adverse credibility determination.

15

16   **B.**     **Reversal is not warranted based on the ALJ's alleged failure to make a**

17           **proper residual functional capacity ("RFC") determination (Disputed**

18           **Issue One).**

19           Disputed Issue One is directed to the ALJ's RFC determination. (<u>See</u> Jt Stip

20   at 4-10.) The ALJ determined that plaintiff's RFC enabled her to perform light work

21   with no more than frequent balancing, stooping, and walking on even terrain; no more

22   than occasional kneeling, crouching, crawling, climbing, and pushing and pulling

23   with the left lower extremity; no concentrated exposure to workplace hazards; no

24   complex or detailed work activity; and no more than occasional interaction with the

25   public and frequent interaction with co-workers and supervisors. (<u>See</u> 1 AR 17.)

26           Plaintiff contends that the ALJ's RFC determination was erroneous because her

27   limitations "preclude her from standing and/or walking more than 1 to 2 hours out of

28   an 8 hour workday" and because she is "incapable of standing and/or walking up to

6 hours out of an 8 hour workday." (See Jt Stip at 4.)  However, plaintiff proffers no medical opinion evidence to corroborate this limitation: no physician opined that plaintiff was precluded from standing and/or walking more than 1 to 2 hours out of an 8 hour workday.[3]  Although plaintiff cites various medical records describing her conditions, symptoms, and treatment (see Jt Stip at 4-5), plaintiff does not show how such evidence translates into any specific functional limitations, much less a limitation precluding her from standing and/or walking more than 1 to 2 hours out of an 8 hour workday.  See Houghton v. Commissioner Social Sec. Admin., 493 Fed. Appx. 843, 845-46 (9th Cir. 2012) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (ALJ was not required to discuss conditions "in the absence of significant probative evidence that they had some functional impact on Houghton's ability to work"); see also Morgan, 169 F.3d at 601 (ALJ properly discounted medical evidence of symptoms and characteristics where the record failed to "show how Morgan's symptoms translate into specific functional deficits which preclude work activity" and physician "did not explain *how* these characteristics precluded work activity in Morgan's case") (emphasis in original).  The only evidence that could be construed as reflecting such a limitation was plaintiff's own subjective symptom testimony, but the Court has found that the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony was supported by substantial evidence.

Plaintiff further contends that the ALJ's RFC determination was erroneous because the ALJ failed to consider her need to use a cane when standing and/or walking.  (See Jt Stip at 5.)  As support, plaintiff cites her own subjective symptom

---

[3]    Indeed, the Court notes that the ALJ asked, during the administrative hearing, whether any treating physician had an offered an opinion regarding plaintiff's physical limitations.  (See 1 AR 69-71.)  Plaintiff's counsel represented that he would try to obtain such an opinion, but he never submitted one for the record.

1    testimony and a medical record from July 2009 (approximately six months after her
2    accident in January 2009) recommending that she use a cane.  (See Jt Stip at 5; see
3    also 1 AR 56, 350.)   The record also reflects that plaintiff was using a cane in
4    November 2009. (See 1 AR 368.) However, the medical record also reflects that two
5    physicians subsequently noted, in May 2010 and November 2010, that plaintiff was
6    walking without a cane and did not need one. (See 1 AR 449; 2 AR 555, 558.) And
7    nowhere in the voluminous medical record is there evidence that plaintiff
8    permanently needed a cane after she recovered from her accident.  Accordingly, the
9    Court finds that the brief references to plaintiff's use of a cane in the aftermath of her
10   accident were not significant and probative evidence that the ALJ was required to
11   discuss before making his RFC determination. See Howard ex rel. Wolff v. Barnhart,
12   341 F.3d 1006, 1012 (9th Cir. 2003) (an ALJ need only discuss evidence that is
13   significant and probative); Cashin v. Astrue, 2010 WL 749884, at *11 (C.D. Cal. Feb.
14   24, 2010) (physician's observation that claimant needed a cane was not significant
15   probative evidence that the ALJ had to discuss in the absence of evidence that the
16   cane was medically required).

17          Plaintiff further contends that the ALJ's RFC determination was erroneous
18   because the ALJ failed to account for her statements concerning medication side
19   effects. (See Jt Stip at 5.) Preliminarily, the Court notes that medication side effects
20   must be medically documented in order to be considered.  See Miller v. Heckler, 770
21   F.2d 845, 849 (9th Cir. 1985); see also Greger v. Barnhart, 464 F.3d 968, 973 (9th
22   Cir. 2006) (holding that ALJ's failure to include fatigue as a limitation in the
23   hypothetical posed to vocational expert was not error where claimant did not report
24   any side effects of fatigue to his doctors during the relevant period); Nyman, 779 F.2d
25   at 531 ("[A] claimant's self-serving statements may be disregarded to the extent they
26   are unsupported by objective findings.").  Here, although plaintiff has pointed to
27   instances in the record were she complained of medication side effects as part of her
28   application for disability benefits (see Jt Stip at 5; see also 1 AR 52, 171, 209-10,

238, 252), she has failed to point to anywhere in her medical records where her medication side effects were medically documented.  In any event, as noted above, the ALJ addressed plaintiff's complaints of medication side effects and determined that they did not support a finding that these limitations continued to be disabling for 12 continuous months (see 1 AR 19), a determination which plaintiff does not challenge.  Moreover, the Court finds that plaintiff's passing references to side effects such as drowsiness, sleepiness, and nausea were not so severe as to interfere with her ability to work.  See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (ALJ did not err in failing to include medication side effects in hypothetical question where plaintiff's allegations of dozing off, dry mouth, and falling asleep while driving were not severe enough to interfere with ability to work); Norman v. Astrue, 2010 WL 4916373, at *5 (C.D. Cal. Nov. 23, 2010) ("Numerous cases, however, have held that an ALJ need not address medication side effects where there is but passing mention of them, there is no allegation that they interfere with the ability to work beyond the limitations assessed in the RFC, or there is no medical evidence of side effects severe enough to interfere with the ability to work.") (citing cases).

For the foregoing reasons, the Court finds that reversal is not warranted based on the ALJ's alleged failure to make a proper RFC determination.

*******************

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: June 23, 2014

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

9